# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | | |
|---|---|---|
| MARK JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 3:17-cv-00825-PPS |
| | ) | |
| SOUTH BEND COMMUNITY | ) | |
| SCHOOL CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Mark Johnson, a Caucasian teacher and basketball coach at South Bend Riley High School, brings three claims against his former employer, the South Bend Community School Corporation, based upon allegations that African American employees interfered with and criticized his coaching because of his race, and the school failed to respond to his reports of racial harassment. There are two federal claims: Count I is a race discrimination disparate treatment claim and Count II is a claim that Johnson was retaliated against for complaining about the discrimination. There is also a state law claim alleged in Count III of the Amended Complaint. That claim is for negligent failure to supervise and failure to train employees against committing racial discrimination. SBCSC seeks dismissal of the Amended Complaint on the grounds that it fails to state a claim. [DE 20.] For the reasons detailed below, the motion will be **DENIED** as to Count I (race discrimination) and Count II (retaliation) because the

Amended Complaint states plausible claims for relief on these claims. The Motion will be **GRANTED** as to Count III (negligent failure to supervise) because this count fails to state a claim. But Johnson will be granted leave to re-file and cure the pleading deficiencies.

## Factual Background

Let's start with the facts as they are alleged in the Amended Complaint which I accept as true for present purposes. Johnson was a teacher and boys' basketball coach at South Bend Riley High School for 15 years. [Am. Compl. ¶¶ 11, 14.] Prior to the start of the 2016-2017 basketball season, Principal Francois Bayingana (who is African American) did something unusual; he directed Johnson to keep a certain number of players on the boys' basketball teams. [*Id.* at ¶¶ 18, 20.] Leslie Wesley is an African American member of the school board, and Johnson was also specifically instructed by Principal Bayingana to keep Wesley's son on the varsity basketball team. [*Id.* at ¶¶ 16, 21.] Against his own wishes, Johnson complied with the instructions. [*Id.* at ¶ 24.] This was new to Johnson; he had never before been told that he had to keep a certain amount of players or a specific player on his teams. [*Id.* at ¶ 22.] South Bend Community School Corporation has four high schools (Adams, Clay, Riley and Washington), and Johnson is not aware of any other basketball coach in SBCSC that received similar directions. [*Id.* at ¶ 23.]

During the season, Ms. Wesley, the School Board member, tried to interfere with Johnson's coaching authority. For example, she made negative comments about him in

the community and complained to the Indiana High School Athletic Association about Johnson's qualifications. [*Id.* at ¶¶ 25-26.] In addition, Johnson claims that Wesley went public with the complaints about him and his coaching. In particular, she went on Facebook and publicly accused him of hidden racism. [*Id.* at ¶ 27.]

Wesley wasn't the only one harassing Johnson. As luck would have it, Wesley's sister, Charan Richards, is the head guidance counselor at South Bend Riley. According to Johnson, in the midst of the basketball season, Richards started to do Wesley's bidding. On February 12, 2017, Richards sent an email to Johnson, carbon copying Principal Bayingana and the athletic director, saying "Mark, from [South Bend] LaSalle to [South Bend] Riley you have done African American males (team players) wrong" and "I'm on to you Mark . . . ." [*Id.* at ¶ 28.] The message even had the whiff of a threat to it; Richards told Johnson that "I am watching you this year . . . ." *Id.*

According to Johnson, throughout the school year, he sought guidance and help from his superiors in dealing with the alleged harassment. [*Id.* at ¶ 29.] For example, on the day he received the email described above, he immediately reported the harassment to Principal Bayingana and the South Bend Riley athletic director telling them that he believed Richards' and Wesley's actions constituted harassment. [*Id.* at ¶30.] Pursuant to the SBCSC Anti-Harassment policy, Johnson asked for a meeting with his building administrator — Principal Bayingana — to discuss his complaints of unlawful harassment. [*Id.*] However, for reasons that are unclear, the Principal did not meet with Johnson. [*Id.* at ¶ 31.] Dr. Kenneth Spells, the Superintendent for the SBCSC,

also knew of Johnson's complaints but failed to investigate the harassment allegations. [*Id.* at ¶ 33.] Johnson alleges that SBCSC failed to follow its own Anti-Harassment policies. [*Id.* at ¶ 34.]

After Bayingana and Dr. Spells failed to investigate his harassment complaints, Johnson "did not believe he had the support of his administration and he did not believe he could remain an effective teacher and coach since he is a Caucasian male in a school with a large minority student, teacher, and administrative population." [*Id.* at ¶ 36.] So Johnson retired from his teaching and coaching position. [*Id.* at ¶ 35.]

Post retirement, Johnson agreed to teach summer school during the summer of 2017 at SBCSC. [*Id.* at ¶ 37.] However, following the June 5, 2017 school board meeting, Johnson was the only teacher not approved for summer school. [*Id.* at ¶ 38.] Johnson alleges he was singled out and not hired to teach summer school because he publicly complained about the harassment. [*Id.* at ¶ 39.] His allegations received media attention by various South Bend media outlets, including TV stations and the South Bend Tribune. [*Id.* at ¶ 40.]

As noted above, the Amended Complaint asserts three claims against SBCSC: Count I is for race discrimination in violation of 42 U.S.C. § 2000e, *et. seq.* based upon a hostile work environment which Johnson says led to his constructive discharge; Count II is for retaliation based upon Johnson not getting hired to teach summer school after he complained of racial harassment in violation of 42 U.S.C. § 2000e, *et. seq.*; and Count III is for negligent failure to supervise and train in violation of Indiana state law.

**Discussion**

SBCSC has moved to dismiss the Amended Complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6). In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While I must accept all factual allegations as true and draw all reasonable inferences in the complainant's favor, I don't need to accept threadbare legal conclusions supported by purely conclusory statements. *See Iqbal*, 556 U.S. at 678. Johnson must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Making the plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

**Count I - Race Discrimination**

To survive a motion to dismiss a claim for race discrimination, Johnson "need only aver that the employer instituted a (specified) adverse employment action against [him] on the basis of [his race]." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (2008). Because Johnson is not a racial minority, in a case of reverse discrimination like this one, he ultimately bears the burden of showing that SBCSC had a reason or inclination to discriminate against white men or that there is something fishy about the facts at hand. *See Good v. Univ. of Chicago Med. Ctr.*, 673 F.3d 670, 679 (7th Cir. 2012); *Nagle v. Village of*

*Calumet Park*, 554 F.3d 1106, 1119 (7th Cir. 2009).

But for now, Rule 8 only requires a short and plain statement of the claim showing the pleader is entitled to relief. Fed. R. Civ. P. 8(a). The rules do not require a plaintiff to plead facts. *Rapid Test Prods., Inc. v. Durham Sch. Servs.*, 460 F.3d 859, 860-61 (7th Cir. 2006). Rather, a claim must simply contain sufficient factual matter to state a claim to relief that is plausible on its face and not one that is merely speculative. *Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010). Particular to pleading under Title VII, the Seventh Circuit has said the following, even after *Twombly*:

> We previously have stated, on numerous occasions, that a plaintiff alleging employment discrimination under Title VII may allege these claims quite generally. A complaint need not "allege all, or *any*, of the facts logically entailed by the claim," and it certainly need not include evidence. *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998) (quoting *Am. Nurses' Ass'n v. Illinois*, 783 F.2d 716, 727 (7th Cir. 1986)); *see also Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 714 (7th Cir. 2006) ("Federal complaints plead *claims* rather than facts."). Indeed, "litigants are entitled to discovery before being put to their proof, and treating the allegations of the complaint as a statement of the party's *proof* leads to windy complaints and defeats the function of [Federal Rule of Civil Procedure] Rule 8." *Bennett*, 153 F.3d at 519.

*Tamayo,* 526 F.3d at 1081 (emphasis in original). Indeed, "[a] plaintiff still must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." *Id.* at 1083 (quotation omitted). In other words, even if the alleged facts appear doubtful, or recovery seems remote, I can't dismiss a complaint for failure to state a claim if, when the alleged facts

6

are taken as true, a plaintiff has "nudged their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570.

SBCSC argues that Johnson's hostile work claim fails because he has not pleaded egregious and intolerable working conditions. The Seventh Circuit has recognized that an employee's constructive discharge can come in two forms. *Wright v. Illinois Dep't of Children & Family Servs.*, 798 F.3d 513, 527 (7th Cir. 2015). The first entails an employee who resigns due to discriminatory harassment. "Such cases require a plaintiff to show working conditions even more egregious than that required for a hostile work environment claim because employees are generally expected to remain employed while seeking redress, thereby allowing an employer to address a situation before it causes the employee to quit." *Id.* (quotation omitted). The second form of constructive discharge occurs when "an employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated." *Id.* (quotation omitted).

Here, Johnson proceeds under the first prong of constructive discharge. Johnson alleges that he was told by the Principal to keep a certain number of players on the basketball team (including the son of a school board member), a member of the school board made negative comments about Johnson in the community (including a Facebook post which accused Johnson of hidden racism), he was sent an email from the head guidance counselor accusing him of treating African American players unfairly and stating she was "watching [him] this year," and that he complained of the racial harassment and no one investigated his unlawful harassment complaints. [Am .

7

Compl. ¶¶ 20-21, 25-28, 30-31, 33.] Furthermore, Johnson tells me he was forced to retire because SBCSC did precisely nothing in response to his complaints of harassment. In particular, it failed to investigate his harassment claims in accordance with its Anti-Harassment policy, and he did not believe he could remain an effective teacher and coach. [*Id.* at ¶¶ 30-31, 36.] Johnson also alleges that these actions were intentional, purposeful, and part of a plan to eliminate him from holding a teaching and coaching position, and that SBCSC's actions were motivated in whole or part by Johnson's race. [*Id.* at ¶ 49.]

Johnson has pleaded sufficient factual detail to put SBCSC on notice of a plausible claim that he was constructively discharged, and the allegations do rise above the speculative level. I will concede that the factual allegations are a bit tepid at this point, but they are enough, if barely so, to get the case to discovery. And to the extent SBCSC argues that Johnson hasn't said enough about how egregious his working conditions were, I think that is something best left for summary judgment, after discovery has fleshed out all the facts of the case. *See Moriarty v. Dyson, Inc.*, No. 09 C 2777, 2010 WL 2745969, at *6 (N.D. Ill. Jul. 8, 2010) (denying motion to dismiss constructive discharge claim in employment discrimination case, finding "[d]efendant's motion seeks to require plaintiff to plead her proof. This argument is more appropriate for summary judgment. At the pleading stage, however, plaintiff has provided enough factual allegations to raise a right to relief above the speculative level.").

One more thing on the discrimination claim: SBCSC contends that the Amended

Complaint should be dismissed because Johnson fails to allege that similarly situated non-white employees were treated more favorably. But that is an evidentiary standard used during summary judgment. It is not a pleading requirement. Indeed, the United States Supreme Court has rejected this exact argument (on several grounds), including the explanation that the *McDonnell Douglas* prima facie framework "is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002).

The result is the same with Johnson's hostile work environment claim which survives dismissal. To state a claim for racial harassment, Johnson must set forth sufficient factual matter to make it plausible that: "(1) [he] was subject to unwelcome harassment; (2) the harassment was based on . . . [a] reason forbidden by Title VII; (3) the harassment was severe or pervasive so as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is a basis for employer liability." *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cnty.*, 804 F.3d 826, 833-34 (7th Cir. 2015); *see also Alamo v. Bliss*, 864 F.3d 541, 549 (7th Cir. 2017).

Although SBCSC claims Johnson fails to plead discriminatory animus, this is simply incorrect. Johnson does allege that the harassment occurred because of his race. Indeed, the Amended Complaint reads "Defendant, SBCSC, discriminated against Mark Johnson on account of Mark Johnson's race in violation of 42 U.S.C. § 2000e, *et seq.*" [Am. Compl. ¶ 43.] And, to the extent SBCSC argues that Johnson has failed to allege that the harassment was so severe and pervasive as to create a hostile working

9

environment, while I acknowledge that this is not an easy standard to meet, this scrutiny is more properly addressed at the summary judgment stage. "Motions to dismiss do not test whether plaintiffs will prevail, they merely test the sufficiency of the complaint." *Cotton v. South Suburban Hosp.*, No. 02 C 6000, 2002 WL 31572116, at *2 (N.D. Ill. Nov. 19, 2002) (denying motion to dismiss hostile work environment claim where plaintiff alleged only one incident of non-physical harassment). Considering all of the circumstances described in the Amended Complaint, the hostile work environment claim is sufficient to survive this motion to dismiss.

**Count II - Retaliation**

The parties agree that to state a claim for retaliation, a plaintiff must allege (1) he engaged in a legally protected activity; (2) he suffered an adverse employment action; and (3) a causal connection between the protected activity and the adverse action. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006). That is where the agreement ends. SBCSC argues that Johnson failed to plead protected activity and that he did not sufficiently plead an adverse employment action.

"Merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient." *Orton-Bell v. Indiana*, 759 F.3d 768, 776 (7th Cir. 2014) (quoting *Tomanovich*, 457 F.3d at 663)). Rather, to be protected under Title VII, the complaint must indicate "the discrimination occurred because of sex, race, national origin, or some other protected class . . . ." *Id.* Here, the Amended Complaint sufficiently alleges that

10

"Mark Johnson suffered various forms of unlawful racial discrimination while employed by SBCSC" and that Johnson "informed South Bend Riley Principal Francois Bayingana that Mark Johnson had suffered unlawful racial discrimination." [Am. Compl. ¶¶ 54-55.] This is quite different from the cases cited by SBCSC, including *Tomanovich*, where the plaintiff only filed a general grievance alleging "discriminatory treatment with respect to [plaintiff's] pay," *Tomanovich*, 457 F.3d at 663, and *Buchanan v. Cook Cnty.*, No. 12 C 4951, 2013 WL 2637875, at *3-4 (N.D. Ill. June 12, 2013), where the grievance only alleged discrimination in violation of a collective bargaining agreement. In this case, Johnson does specifically allege that he informed SBCSC of the unlawful racial discrimination, and that he was retaliated against because of his action in reporting the racial harassment and publicly criticizing SBCSC in the media.

SBCSC also argues that Johnson failed to sufficiently allege an adverse action. In a discrimination claim, a plaintiff must allege to have suffered from an "adverse employment action." *See Tamayo*, 526 F.3d at 1084. "[C]ourts have found the criteria for materially adverse employment action to be met [where the] employee's compensation, benefits or other financial terms of employment are diminished." *Tart v. Ill. Power Co.*, 366 F.3d 461, 475 (7th Cir. 2004) (internal quotations omitted). "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Crady v. Liberty Nat'l Bank & Trust Co. of Ind.*, 993 F.2d 132,

11

136 (7th Cir. 1993). Notably, "[a]dverse employment action has been defined quite broadly in this circuit." *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996) (citation omitted). Retaliatory conduct is actionable if the challenged actions are ones that a reasonable employee would find to be materially adverse such that the employee would be "dissuaded" from engaging in the protected activity. *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

Here, Johnson alleges he was denied the opportunity to teach summer school and SBCSC knew that by not approving him to teach summer school, his pension would be negatively affected (Johnson's pension is based on his last five years of income). [Am. Compl. ¶¶ 38, 41.] Even though the denial occurred after Johnson retired, he has met the broad definition of adverse employment action by alleging a material loss of income and an action that could be found by a fact finder to dissuade an employee from engaging in protected activity. As such, the motion to dismiss the claim of retaliation is denied. *See, e.g., Jefferson v. City of Chicago*, No. 97 C 4895, 1999 WL 116223, at *6 (N.D. Ill. Feb. 26, 1999) (denying motion to dismiss retaliation claim under Title VII, noting that while the plaintiff "pleads these allegation[s] in a conclusory fashion, he is certainly entitled to do so.").

**Count III - Negligent Failure to Supervise**

Count III of the Amended Complaint is titled "Negligent Failure to Supervise." Johnson alleges that SBCSC owed him a duty, it breached that duty by failing to train its employees to not commit racial harassment, and that as a result of SBCSC's breaches,

12

Johnson was injured. [Am. Compl. ¶¶ 67-72.]

A claim for negligent supervision or failure to train is distinct from respondeat superior liability, as the former cause of action regards the employer's own negligence, rather than the employer's vicarious liability for negligence of its employee. *Willyard v. Wal-Mart Stores, Inc.*, No. 09-cv-295-DRH, 2010 WL 487080, at *4 (S.D. Ill. Feb. 8, 2010). Negligent training and supervision imposes liability on an employer when an employee "steps beyond the recognized scope of his [or her] employment to commit a tortious injury upon a third party." *Elwell v. First Baptist Church of Hammond*, No. 2:16-CV-158, 2016 WL 4920021, at * 2 (N.D. Ind. Sept. 15, 2016) (quotation omitted). In contrast, under the doctrine of respondeat superior, an employer can be liable for employee acts committed within the scope of their employment. *Id.*

Here, the Amended Complaint alleges a claim for negligent failure to supervise. The count contains that title, and the allegations deal with the actions of the employer - SBCSC's failure to train its employees and its failure to supervise and protect Johnson from harassment. A bit of confusion arises in the briefing, though, because SBCSC argues: (1) that Johnson's negligent supervision claim is barred by the ITCA (which seems to be an argument premised upon respondeat superior theory); and (2) that it also fails because Johnson does not allege SBCSC's employees acted outside their scope of employment (which seems to be a negligent supervision and training theory). To complicate things further, Johnson does not address the argument that he failed to state a claim for negligent failure to supervise because he did not allege the employees acted

13

outside the scope of their employment. Instead, Johnson dives right into the immunity argument under the ITCA. I will focus my attention on the simple question of whether Count III states a claim for negligent failure to supervise, and I find that it does not.

SBCSC argues that a claim of negligent failure to supervise must contain allegations that the employees acted outside their scope of employment. They are correct on this score. Under Indiana law, negligent supervision, retention and training may impose liability on an employer when an employee acts beyond the scope of his or her employment to commit a tortious injury upon a third party. *Perron v. JP Morgan Chase Bank, N.A.*, No. 1:12-cv-01853-TWP-TAB, 2014 WL 931897, at * 5 (S.D. Ind. Mar. 10, 2014). "A cause of action based on negligent hiring, training and supervision is appropriate only where it is alleged that the employee acted outside the scope of his or her employment; otherwise the doctrine of *respondeat superior* provides the proper vehicle for a direct action aimed at recovering the damages resulting from a specific act of negligence committed by an employee within the scope of his employment." *Id.* (quoting *Tindall v. Enderle*, 320 N.E.2d 764, 768 (Ind. Ct. App. 1974)); *see also Friday v. Magnifique Parfumes and Cosmetics, Inc.*, No. 3:17-cv-380 JD, 2017 WL 6048887, at *1 (N.D. Ind. Dec. 7, 2017); *Sedam v. 2JR Pizza Enters., LLC*, 84 N.E.3d 1174, 1179 (Ind. 2017).

In this case, Johnson alleges that SBCSC "negligently failed to supervise its employees and failed to adequately train its employees regarding their responsibility not to commit unlawful racial harassment and SBCSC failed to train its employees regarding SBCSC's Anti-Harassment policies." [Am. Compl. ¶ 67.] Johnson fails to

14

include any allegations anywhere in the Amended Complaint that the employees were acting outside the scope of their employment. This is fatal to the Amended Complaint. *See, e.g., Friday*, 2017 WL 6048887, at *1 (dismissing negligent hiring, training or supervision claim where complaint did not allege supervisor was acting outside the scope of his employment); *Hansen v. Bd. of Trustees of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 612 n.2 (7th Cir. 2008) (noting that claim for negligent hiring, supervision, and retention requires a plaintiff to plead that the employee's actions were outside the scope of his employment); *Gordon v. Bank of New York Mellon Corp.*, No. 4:12-cv-18, 2017 WL 662856, at *8 (N.D. Ind. Feb. 17, 2017) ("the tort of negligent hiring and supervision is inapplicable when an employee is acting within the scope of his employment.").

What's more, as noted above, Johnson does not bother to even address this argument in his response, and he has therefore waived the issue in any event. *See Haywood v. Novartis Pharms. Corp.*, No. 2:15-CV-373, 2016 WL 5394462, at *5 (N.D. Ind. Sept. 27, 2016)(finding failure to respond to an argument in a motion to dismiss results in waiver); *see also Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010).

In sum, the Amended Complaint as currently written alleges a claim for negligent failure to supervise, but Johnson does not allege that the SBCSC employees were acting outside the scope of their employment. Therefore, I find it warranted to grant the motion to dismiss as to Count III. Count III will be dismissed without prejudice, granting leave for Johnson to re-file only Count III and cure the pleading deficiencies as discussed in this opinion.

## Conclusion

For the reasons stated above, South Bend Community School Corporation's Motion to Dismiss [DE 20] is **DENIED IN PART AND GRANTED IN PART**. The Motion is **DENIED** with respect to Counts I and II, which remain pending. The Motion is **GRANTED** with respect to Count III, which is **DISMISSED WITHOUT PREJUDICE**, granting leave for Johnson to re-file and cure the pleading deficiencies within 30 days from the date of this Order.

**SO ORDERED**.

ENTERED: May 22, 2018

/s/ Philip P. Simon
**PHILIP P. SIMON, JUDGE**
**UNITED STATES DISTRICT COURT**